Filed 7/18/25  Oasis Independent Medical Associates v. Lopez CA4/2

*See concurring opinion.*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| OASIS INDEPENDENT MEDICAL ASSOCIATES, INC., | E082871, E083728 |
| Plaintiff and Respondent, | (Super.Ct.No. CVPS2304878) |
| v. | OPINION |
| JOB LOPEZ et al., | |
| Defendants and Appellants. | |
| _____ | |
| JOB LOPEZ, et al., | |
| Cross-complainants and Appellants, | |
| vs. | |
| OASIS INDEPENDENT MEDICAL ASSOCIATES, INC., et al., | |
| Cross-defendants and Respondents. | |

1

APPEAL from the Superior Court of Riverside County.  Manuel Bustamante, Judge.  Affirmed.

Kelly, Trotter & Franzen and David P. Pruett for Defendants, Cross-complainants and Appellants.

Doll Amir & Eley, Michael M. Amir and Paul M. Torres for Plaintiffs, Cross-defendants and Respondents.

This opinion addresses two appeals from one lower court case.  In both appeals, the appellants are Job Lopez (Lopez), CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D.  The first appeal (Court of Appeal case No. E082871) concerns the trial court's grant of a preliminary injunction against Lopez.  The respondent in the first appeal is Oasis Independent Medical Associates, Inc.

The second appeal (Court of Appeal case No. E083728) addresses the trial court's partial grant of an anti-SLAPP motion (Code Civ. Proc., § 425.16) against a cross-complaint that was brought by Lopez, CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D.  In the second appeal, the respondents are Oasis, Desert Oasis Healthcare, and Heritage Provider Network.  We address the appeals in turn.

## I.    FIRST APPEAL (E082871)

Oasis Independent Medical Associates, Inc. (Oasis) sued Lopez, CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D., for unfair competition (Bus. & Prof. Code, § 17200)[1], breach of contract, and other causes of action.  At the request of Oasis,

---

[1]  All subsequent statutory references will be to the Business and Professions Code unless otherwise indicated.

2

the trial court issued a preliminary injunction restraining Lopez "from providing any false and/or misleading information to . . . Oasis's members regarding their care" and "from making unsolicited communications to . . . Oasis Medicare Advantage members." Lopez contends that, for a variety of reasons, the trial court erred in issuing the preliminary injunction. We affirm.

## FACTS

### A.    ALLEGED WRONGFUL ACTS

The following facts are taken from Oasis's memorandum in support of its ex parte application for a preliminary injunction. Independent physician associations (IPA) contract with HMOs "to provide . . . health care services to the HMO's members." "The IPA then contracts 'downstream' with numerous physicians to actually provide the medical care to the IPA's enrollees." "Physicians may further contract 'downstream' with other providers." "Oasis is an IPA which contracts with [physicians] and other providers . . . to provide care to . . . Oasis enrollees." Albert Anderson, M.D. (Anderson), had a contract to treat Oasis's members. Lopez was a nurse practitioner who entered into a partnership with Anderson. Due to that partnership, Lopez also treated Oasis's members.

After years of Lopez and Anderson working together with no major issues, Lopez mass mailed a letter to Anderson's Oasis patients claiming that if they followed Lopez to a different practice "with a new primary care doctor (instead of Dr. Anderson), the 'patients will never lose any benefits or services' and that the patients 'will continue enjoying [their] benefits exactly as before.' " Oasis alleged the foregoing claim by

3

Lopez was false because "Oasis has many programs, services (*e.g.*, medication management, cardiac, and pulmonary clinics) and specialists (*e.g.*, oncologists, cardiologists, etc.) who will not be available with [Lopez's new practice]." Oasis further alleged that Lopez's "agents, including insurance brokers, are cold calling . . . Oasis enrollees assigned to Dr. Anderson, and pushing the same false narrative described above." The allegations about Oasis's services being unique to Oasis and unavailable to patients who leave Oasis are supported by the declaration of Melissa Diaz, Oasis's marketing manager.

One of Oasis's former patients declared, "Recently, a woman called me, unsolicited, and told me that she was calling on behalf of . . . Lopez. The woman told me that I needed to change my primary care doctor and that such a change would not impact my ability to continue seeing the other doctors in . . . Oasis'[s] network of doctors. I reluctantly agreed to switch my provider. After thinking about it, however, I called the person back and told her that I did not want to change my primary care doctor from Dr. Anderson and that I wanted to stay with . . . Oasis. The person responded that I could not change back."

In Oasis's complaint it alleges that it sent Lopez a cease-and-desist letter on July 27, 2023. Oasis further alleged that Lopez's wrongful acts occurred "within the past several months." Oasis's complaint was filed on October 6, 2023, so we infer the alleged wrongful acts occurred in the summer and fall of 2023. Brian Hodgkins, M.D., executive vice president of Oasis's clinical operations, discovered that, within the 45 days prior to his November 2023 declaration, 80 of Anderson's patients left his care.

4

B.     EX PARTE APPLICATION

Oasis applied ex parte for a temporary restraining order and a preliminary injunction. Oasis asserted it was likely to prevail on its cause of action for unfair competition (§ 17200). Oasis asserted Lopez violated "Health & Safety Code § 1360[, which] prevents the use of 'any advertising or solicitation which is untrue or misleading.' " Oasis contended that Lopez was "deceiving unsuspecting patients" into "switch[ing] health care plans and providers." Oasis contended its patients would suffer irreparable harm if the injunction were not issued because their health care would be disrupted.

C.     OPPOSITION

In opposing the ex parte application, Lopez asserted that Oasis failed to demonstrate any irreparable harm because monetary relief could cure any damage suffered by Oasis.

D.     REPLY

In Oasis's reply it highlighted Lopez's failure to refute that he mass-mailed letters containing false information to Oasis's members and that members lost access to their doctors. As to irreparable harm, Oasis asserted that it "showed [Lopez's] wrongful conduct is causing irreparable harm *to Oasis members*."

E.     RULING

The trial court granted the preliminary injunction restraining Lopez from (1) "providing any false and/or misleading information to . . . Oasis'[s] . . . members regarding their care," (2) advising Oasis's members "that a change in primary care

doctors or change in affiliations from . . . Oasis will have no impact on the members' health care, including but not limited to continued access to specialists"; and (3) "making unsolicited communications to . . . Oasis Medicare Advantage members (*i.e.*, cold-calling, letters to patients, home visits)."

The trial court's ruling was primarily based upon its conclusion that Oasis was likely to prevail on its cause of action for breach of the implied covenant of good faith and fair dealing arising from a contract between Oasis and Lopez. The contract required that, as to health maintenance organization (HMO) patients, Lopez would exclusively work with Oasis's members. The trial court did not expressly address the element of irreparable harm.

As to Oasis's cause of action for unlawful, unfair, or fraudulent business acts (§ 17200), the trial court wrote, "Oasis argues, among other things, that NP Lopez's conduct violates his contractual duties under the Exclusivity Agreement, as well as several federal and state laws precluding such types of solicitation conduct. Again, there is no evidence that any of the other Defendants, other than NP Lopez, engaged in any unlawful solicitation. Thus, . . . Oasis fails to show a probability of prevailing on the merits on this cause of action as to Dr. Lopez, Dr. C[o]rdova and CoachellaMed."

## DISCUSSION

### A.    FALSE STATEMENTS

Lopez contends the trial court did not make a finding that Lopez made false statements. Lopez is mistaken. The trial court's explanation of its ruling reads, "Again, there is no evidence that any of the other Defendants, *other than NP Lopez*, engaged in

6

any unlawful solicitation." (Italics added.) That sentence reflects a finding that Oasis is likely to prevail on its claim that Lopez engaged in an unlawful business practice (§ 17200) by sending Oasis's members untrue or misleading solicitations (Health & Saf. Code, § 1360).

In Lopez's appellant's reply brief, he asserts that substantial evidence does not support the finding that he made false claims to Oasis's members. We do not analyze "issues raised for the first time in a reply brief, in the absence of a showing of good cause why such issues were not raised in the opening brief." (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322.) Lopez does not address the topic of good cause. Consequently, we do not analyze the substantial evidence issue.

B.    <u>STOLEN INFORMATION</u>

Lopez contends the trial court did not make a finding that he stole patient information. Although we agree, that is not a basis for reversal. The preliminary injunction restrains Lopez from "providing any false and/or misleading information to . . . Oasis's members regarding their care." The focus of the order is on deceptive marketing, not stolen information. The lack of a finding on a topic not pertinent to the order fails to show that the order is erroneous.

C.    <u>COMMUNICATING WITH PATIENTS</u>

Lopez contends the preliminary injunction prevents him from "communicating with patients regarding their health care, 'including, but not limited to communications regarding treatment options, alternative plans, or other coverage arrangements.' " Contrary to Lopez's position, he is not so broadly restrained. The injunction prohibits

7

Lopez "from providing any false and/or misleading information to . . . Oasis's members regarding their care" and from unsolicited marketing communications. The injunction does not bar Lopez from speaking honestly with patients regarding their health when contacted by the patients.

D.      EXCLUSIVITY AGREEMENT

        1.      *PROCEDURAL HISTORY*

Lopez had a partnership with Anderson, who had a contract with Oasis. In Anderson's contract, he agreed to limit his HMO patients to Oasis's members. "Oasis did not wish to leave a 'loophole' in its exclusivity arrangement with Dr. Anderson." Therefore, in 2006, Lopez and Oasis entered into an exclusivity agreement in which Lopez agreed that, as to HMO patients, Lopez would exclusively work with Oasis's members. The exclusivity agreement applies "for the full term of [the exclusivity] Agreement and any renewal period." The exclusivity agreement originally had a 15-year term, which would have ended in 2021. In 2017, Oasis and Lopez agreed to extend the exclusivity agreement into 2025.

In Lopez's declaration, he declared that Oasis terminated its relationship with him on August 27, 2023. On September 25, 2023, Anderson sent a letter to patients that reads in relevant part, "Although, Job Lopez has decided to leave my practice."

In Oasis's November 2023 ex parte application for a restraining order, it alleged that the exclusivity "agreement remains valid and ongoing," because it was designed to last the full term of the exclusivity agreement—not merely the term of Lopez's partnership with Anderson. Oasis relied on the exclusivity agreement in asserting that

Lopez should be restrained from competing with Oasis. Oasis argued, "Indeed, the requested injunction merely would require Mr. Lopez and Defendants to continue honoring the Exclusivity Agreement and the laws concerning solicitation."

In opposing the request for a preliminary injunction, Lopez asserted that Oasis's act of seeking to enforce the exclusivity agreement was an improper posttermination restraint on employment, violative of section 16600.

The trial court concluded that section 16600 "prohibits employee noncompetition agreements. There is no evidence that . . . Oasis and . . . Lopez had any employer-employee relationship, such that this section is applicable." In the trial court's ruling, it found that Oasis had a likelihood of prevailing on its cause of action for breach of the implied covenant of good faith and fair dealing, which was based upon the exclusivity agreement.

2. *APPLICATION OF SECTION 16600*

Lopez contends that the trial court erred in concluding that section 16600 did not apply in this case.

Section 16600, subdivision (a), provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a *lawful profession, trade, or business of any kind* is to that extent void." (Italics added.) The statute's plain language provides that it applies to "every contract" restraining "anyone" from working in their lawful profession. (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 [" 'If the statutory language is unambiguous, then its plain meaning controls.' "].) The trial court erred in concluding that the statute only applies to

employment contracts.  (See *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1159 (*Ixchel*) [section 16600 applies "to contractual restraints on business operations and commercial dealings"]; *Dayton Time Lock Service, Inc. v. Silent Watchman Corp.* (1975) 52 Cal.App.3d 1, 6-7 [applying section 16600 in the franchisee-franchisor context].)

### 3.    *PREJUDICE*

#### a.    Contention

Lopez contends the order granting the preliminary injunction must be reversed because the trial court " 'applie[d] the wrong legal standard[]' " when it erroneously concluded that Business and Professions Code section 16600 was inapplicable.  The order will be reversed only if the error was prejudicial.  To establish prejudice, Lopez must demonstrate "that a different result would have been probable if such error . . . had not occurred."  (Code Civ. Proc., § 475.)

#### b.    False and Misleading Statements

Hypothetically, if Lopez were correct that the exclusivity agreement was void under section 16600, then the error would be harmless as to the portion of the injunction barring him from making false or misleading statements.  The trial court found that Oasis was likely to prevail on its claim that Lopez engaged in an unlawful business practice (Bus. & Prof. Code, § 17200) by giving Oasis's members untrue or misleading marketing materials (Health & Saf. Code, § 1360).  The foregoing finding supports the portion of the order restraining Lopez "from providing any false and/or misleading information to . . . Oasis's members regarding their care."  Thus, that portion of the

10

order would remain in place, even if the exclusivity agreement were void because, that part of the order is based upon a violation of Health and Safety Code section 1360. Consequently, as to that portion of the preliminary injunction, the error is harmless.

### c. Solicitations in General

Lopez contends the portion of the preliminary injunction prohibiting him "from 'making unsolicited communications to . . . Oasis Medicare Advantage members (i.e., cold-calling, letters to patients, home visits),' " is invalid if the exclusivity agreement is void.

Under section 16600, subdivision (a), every contract that restrains a person from engaging in their lawful profession is void. However, not every contract limiting one's work is void per se. The section 16600 void per se rule applies "strictly in the context of noncompetition agreements following the termination of employment or the sale of interest in a business." (*Ixchel*, *supra*, 9 Cal.5th at p. 1159.) In other contexts, such as "contractual restraints on business operations and commercial dealings" a reasonableness standard is applied to determine whether the contract is void. (*Ibid*; see also *Samuelian v. Life Generations Healthcare, LLC* (2024) 104 Cal.App.5th 331, 350-351.)

Lopez asserts the section 16600 void per se rule applies because the exclusivity agreement is a posttermination noncompete provision. Lopez fails to explain what type of relationship was terminated, e.g., an employment relationship or a joint ownership in a business. In our review of the record, there is nothing obvious indicating that Lopez was employed by Oasis or that Oasis and Lopez jointly owned a business. Due to

11

Lopez's failure to identify what type of relationship was terminated, we conclude Lopez has forfeited the issue of whether the exclusivity agreement is void per se under section 16600. (*Mahram v. The Kroger Co.* (2024) 104 Cal.App.5th 303, 310.) Because Lopez forfeited the issue of whether the exclusivity agreement is void per se, he has not demonstrated that a different result would have been probable absent the error.

E.      <u>CONCLUSION</u>

We have not been presented with an argument demonstrating that the trial court prejudicially erred in granting the preliminary injunction. Accordingly, we will affirm the order.

II.      <u>**SECOND APPEAL (E083728)**</u>

Lopez, CoachellaMed, Francisco Cordova, M.D., and Carlos Lopez, M.D. (collectively, Lopez Associates) cross-complained against Oasis, Desert Oasis Healthcare, and Heritage Provider Network (collectively, Oasis Network). The trial court granted, in part, Oasis Network's anti-SLAPP motion. (Code Civ Proc., § 425.16.) Lopez Associates contend the trial court erred by partially granting the anti-SLAPP motion. We affirm.

**FACTS**

In their first amended cross-complaint (FACC), Lopez Associates sought a judicial declaration that the exclusivity agreement was void under section 16600. In their second cause of action, Lopez Associates alleged that Oasis's lawsuit, which included a claim for breach of the exclusivity agreement, constituted unfair competition (§ 17200) because the exclusivity agreement is an improper restraint on Lopez

12

practicing his profession. The following is a quote from Lopez Associates' second cause of action: "[Oasis's] . . . filing of an action in court to attempt to enforce restraints of trade, so as to suppress competitive employment in California, violate California's unfair competition law and public policy against restraints of trade, Sections 16600 and 17200."

In partially granting the anti-SLAPP motion, the trial court struck: (1) the entirety of Lopez Associates' second cause of action; (2) in the fourth cause of action, paragraph 73, the portion reading, " 'and attempted enforcement of Exclusivity Contracts with NP Lopez' "; (3) paragraph 24, which reads, " 'Those threats have included threats of entangling competitors in litigation, with cease and desist letters, including threats of injunctions, to deter competitors from contracting with health care providers who were induced to sign cross-defendants' Exclusivity Contract' "; and (4) the portion of paragraph 1 reading, " 'including threats of litigation and commencement of litigation by those cross-complainants in an effort to achieve restraints of health care providers' professions, trades, and business by virtue of cross-defendants' Exclusivity Contracts.' "

## DISCUSSION

### A.      STANDARD OF REVIEW

"To resolve an anti-SLAPP motion, the trial court engages in a two-step inquiry. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from a protected activity. [Citation.] The moving party has the burden of showing that the challenged cause of action arises from a

13

protected activity. [Citation.] Second, if the moving party has carried that burden, the court must decide whether the opposing party has demonstrated a probability of prevailing on the challenged cause of action. [Citation.] 'The trial court's rulings on both issues are reviewed de novo.' " (*City of Oxnard v. Starr* (2023) 88 Cal.App.5th 313, 320.)

B.    <u>PROTECTED ACTIVITY</u>

A protected activity is one arising from an act in furtherance of a person's "right of petition or free speech." (Code Civ. Proc., § 425.16, subd. (b)(1).) That includes "any written or oral statement or writing made before a . . . judicial proceeding" or "under consideration or review by a . . . judicial body." (*Id*. at subds. (e)(1) & (2).)

The portions of the FACC stricken by the trial court all pertain to Oasis's actions in bringing its complaint against Lopez Associates. Oasis's complaint constitutes a writing before a judicial proceeding that is also under consideration by a judicial body. Therefore, the stricken portions of the FACC pertain to the protected activity of Oasis suing Lopez Associates.

Lopez Associates contend the exclusivity agreement is void per se under section 16600, as a posttermination noncompete agreement, and suing to enforce a void agreement is not a protected activity. The section 16600 void per se rule applies "strictly in the context of noncompetition agreements following the termination of employment or the sale of interest in a business." (*Ixchel*, *supra*, 9 Cal.5th at p. 1159.) Lopez Associates fail to explain what type of relationship with Oasis was terminated, e.g., an employment relationship or an interest in a jointly held business. Due to Lopez

14

Associates' failure to provide the necessary arguments, we conclude they have forfeited the issue of whether the exclusivity agreement is void per se under section 16600. (*Mahram v. The Kroger Co.*, *supra*, 104 Cal.App.5th at p. 310.) As a result, we reject their assertion that Oasis's complaint does not constitute a protected activity.

### C. PROBABILITY OF PREVAILING

Lopez Associates, as the cross-complainants, bore the burden of proving a probability of prevailing. (Code Civ. Proc., § 425.16, subd. (b)(1).) In the second cause of action, Lopez Associates alleged that Oasis's initiation of litigation to enforce the exclusivity agreement was an "unfair business practice[] under Sections 16600 and 17200." Because the unfair business practice claim (§ 17200) is based upon section 16600, Lopez Associates must demonstrate a probability of establishing that the exclusivity agreement is either (1) void per se or (2) void under the reasonableness standard. (*Samuelian v. Life Generations Healthcare*, *supra*, 104 Cal.App.5th at pp. 350-351.) Lopez Associates rely on the void per se rule but fail to explain what type of relationship between Oasis and Lopez was terminated. As a result, they have failed to establish a probability of prevailing on their claim that Oasis engaged in an unfair business practice (§ 17200).

### D. CONCLUSION

The trial court did not err in partially granting the anti-SLAPP motion.

## DISPOSITION

The order granting the preliminary injunction is affirmed.  The order partially granting the anti-SLAPP motion is affirmed.  In both appeals, respondents are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
                                                                    Acting P. J.


I concur:


CODRINGTON
                                        J.

[*Oasis Independent Medical Associates, Inc. v. Lopez*, E082871;
*Lopez v. Oasis Independent Medical Associates, Inc.*, E083728]

MENETREZ, J., Concurring.

The preliminary injunction prohibits only false or misleading communications and unsolicited marketing communications. Appellants' arguments concerning Business and Professions Code section 16600 do not show that prohibiting those communications was an abuse of discretion.

The special motion to strike was granted only as to allegations concerning respondents' litigation or prelitigation conduct. That conduct is protected activity under Code of Civil Procedure section 425.16 and is covered by the litigation privilege. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195.) Appellants' arguments concerning Business and Professions Code section 16600 again fail to show error, because even meritless litigation is protected activity and is covered by the litigation privilege.

I therefore concur in the judgment.

MENETREZ
J.

1